# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned On Briefs June 28, 2011

## STATE OF TENNESSEE v. JEREMY O'NEAL

**Appeal from the Circuit Court for Blount County**
**No. C-16702    David R. Duggan, Judge**

---

**No.  E2010-02608-CCA-R3-CD - Filed August 30, 2011**

---

On October 1,2007, Appellant, Jeremy O'Neal, pled guilty in Blount County to one count of felony robbery. He was originally placed on judicial diversion.  On April 5, 2010, the trial court set aside Appellant's judicial diversion for violating the terms thereof.  The trial court sentenced Appellant to six years with split confinement of thirty-five days with the remainder to be served on probation.  Appellant's probation officer subsequently filed a violation of probation report in September 2010. After conducting a probation revocation hearing, the trial court determined that Appellant had violated the terms of his probation and revoked Appellant's probation.  The trial court ordered Appellant to serve the balance of his six year sentence in incarceration.  Appellant argues on appeal that the trial court abused its discretion in ordering Appellant to serve his sentence in incarceration.  We conclude that there is ample evidence to support the trial court's decision to revoke Appellant's probation and to order him to serve the balance of his sentence in incarceration.  Therefore, we affirm the revocation of probation and the order that Appellant to serve the balance of his sentence in incarceration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Jeremy O'Neal.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Mike Flynn, District Attorney General; and Tammy Harrington, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Factual Background*

The State summarized the facts leading up to the current violation of probation in the following manner:

It looks like back on October the 1st of 2007, [i]nformations were entered and he pled guilty to Class C felony robbery. The sentencing hearing was held June 19th of 2008 and he was granted judicial diversion by the Court. Had a three-year sentence. He was then, on April the 5th of 2010, before the Court on a violation. His diversion was set aside, his guilty plea was entered, and he received a six-year, range-one sentence with a split confinement of 35 days to serve and the balance on enhanced probation at that time.

Appellant's probation officer filed a violation of probation report on July 23, 2010 and an amended report on September 2, 2010. The following violations were listed:

Rule #1: [ ] The Offender was arrested in Knox County on 8-30-10 for Aggravated Burglary, Evading Arrest, Failure to Obey a Court Order, and FTA.
Rule #4: The Offender has not verified any employment while under supervision.
Rule #5: the Offender's residence has never been able to be verified. He had reported invalid addressed multiple times.
Rule #6: The Offender has not reported to probation since 6-1-10.
Rule #9: The Offender has not paid on fees or court costs.
Rule # 10: The Offender has not maintained his 6pm curfew at any time while under supervision.

. . . .

Since he was placed on Enhanced Probation, for a period of 6 years, he had done nothing to remain compliant. Residents of the address he had declared, stated that he did not live there. The residence was checked multiple times. The new address he gave, which was a motel, was never able to be verified. This officer has never know[n] the living arrangements of [Appellant]. While on Enhanced Probation, he remained unemployed, did not pay fees and court costs, and ultimately absconded. The last time he reported to probation was

on 6-1-10. At no time has he been compliant under the rules of any supervision.

On November 22, 2010, the trial court held a probation revocation hearing. Appellant's probation officer testified that she began supervising Appellant on April 12, 2010. She stated that between April 12 and July 26 Appellant failed to report being employed. She was also unable to verify his residence. She attempted several home checks at the beginning of his supervision. When he reported to her, he informed her that it was the correct address. She attempted several more home checks and the residents told her that Appellant did not live there. He later gave her the address of a motel as his residence. When the probation officer checked the motel, Appellant was not there. The probation officer was unable to conduct a home visit from April 12 to July 26. She stated that the last time she saw Appellant was when he reported on June 1, 2010. She attempted to track him down at a previous residence and left a message with the residents there who were Appellant's relatives or friends. However, Appellant did not report back to her. Appellant never provided proof of payment of court costs or fees throughout her supervision. She also stated that Appellant did not maintain his 6:00 p.m. curfew at any time during her supervision. She did not have a telephone number for him, so she was unable to call him and verify his whereabouts. The probation officer testified that Appellant was arrested on August 30, 2010 for new charges and failure to appear. The new charges were later dismissed, but the failure to appear was not dismissed.

The probation officer concluded her direct examination with the following statement:

I don't feel like I'm able to supervise him or offer him any rehabilitation at this point because I have made many efforts to follow him, to track him, to implore him to find a job, to keep in contact with me. And even on my own time tried to track him down to get him back on track. And he has never complied with any of those requests from me or any of our rules, and that is a continuing pattern since he began this probation in 2008.

Appellant also testified at the hearing. He stated that he gave the probation officer his father's address as his place of residence. His girlfriend, Heather Newman, was also living there. Appellant stated that he and his girlfriend stopped living at his father's house because Appellant argued with his step-mother, and she kicked them out of the house. At that point, Appellant and Ms. Newman moved to a hotel. Appellant said that he notified his probation officer of the move when he next reported to her. Appellant and Ms. Newman stayed at the hotel about a week, and they began to move around to different hotels.

Appellant stated that he called his probation officer a few times within a thirty day period, but he admitted that the last time he had contact with her was on June 1. He stated that he did not have a car or a driver's license and these facts prevented him from reporting to her. He testified that he had applied for jobs, but he had not completed the form to give to the probation officer. He has two children. His youngest child's mother is Ms. Newman and that child lives with her.

Appellant stated that he understood he was to follow all the rules while on probation. He testified that he would do things differently if the trial court gave him a second chance. He said that he would find a job, stay out of trouble, and stay away from people who were a bad influence. He stated that he had a place to live with Ms. Newman in Loudon County.

Ms. Newman also testified at the hearing. She stated that she lives in an apartment and has a full-time job. She stated that she is the sole caretaker for her child with Appellant. Ms. Newman stated that she lived with Appellant at his father's residence in April. She said they stayed there to the middle of May when Appellant's step-mother kicked them out. She was pregnant at the time. After they left Appellant's father's house, they stayed in two motels for a week or a night at a time depending upon how much money they had. Ms. Newman stated that she wanted Appellant to come live with her at her apartment. She said that she would be able to help Appellant get back and forth according to his probation requirements.

At the conclusion of the hearing, the trial court revoked Appellant's probation. The trial court stated the following bases for revoking Appellant's probation:

> [N]ot verifying employment while under supervision, not verifying a residence, reporting invalid addresses multiple times, failing to report since June 1, 2010, failing to pay your fees and court costs, and not maintaining [his] 6:00 p.m. curfew while under supervision. The Court also notes that it is true that [he has] a history of non-compliance.

The trial court ordered Appellant to serve his six year sentence. Appellant appeals the revocation of his probation.

## ANALYSIS

On appeal, Appellant argues that the trial court erred in revoking his probation. Appellant admits that "he had not strictly complied with the terms of probation," but argues

that the trial court erred in "ordering incarceration for the balance of the sentence rather than the less severe penalty of split confinement."

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. T.C.A. §§ 40–35–310 & –311. After finding a violation of probation and determining that probation should be revoked, a trial judge can: (1) order the defendant to serve the sentence in incarceration; (2) cause execution of the judgment as it was originally entered, or, in other words, begin the probationary sentence anew; or (3) extend the probationary period for up to two years. *See* T.C.A. §§ 40-35-308(c) & -311(e); *State v. Hunter*, 1 S.W.3d 643, 647-48 (Tenn. 1999). The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a de novo standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). An abuse of discretion is shown if the record is devoid of substantial evidence to support the conclusion that a violation of probation has occurred. *Id.* The evidence at the revocation hearing need only show that the trial court exercised a conscientious and intelligent judgment in making its decision. *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

We have reviewed the record on appeal and find ample evidence to support the trial court's conclusion that a violation of probation occurred. Appellant himself testified that he did not provide proof of employment, had not reported since June 1, 2010, and had not had contact with his probation officer of any kind since that same date. When a trial court has determined that a defendant has violated the terms of his probation, the trial court may choose to order the defendant to serve his sentence in incarceration as originally ordered. In the case at hand, the trial court decided to do so. Based on the record before us, we find no abuse of discretion in ordering Appellant to serve his sentence in incarceration.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court.

_____
JERRY L. SMITH, JUDGE